JOHN M. CANDA

*v.*

ELLIS K. POWERS.

On January 11th, 1879, Mrs. Totten, without her husband joining in the deed, because the parties supposed and were advised that it was unnecessary, conveyed a farm belonging to her to Mr. and Mrs. Allen, for $3,200, subject to a mortgage of $5,000. Of the consideration, $200 were paid in cash by Mr. Allen, and $3,000 in his three notes of $1,000 each, payable to Mrs. Totten. These notes were shortly afterwards endorsed by her to complainant for a prior indebtedness. The complainant, when they were unpaid, brought suit on them in a court in New York, and Allen then proposed that the complainant should accept a deed for the farm in payment of the claim on the notes, which he did. On January 12th, 1879, the defendant issued an attachment against Mr. and Mrs. Totten, who were non-residents, and thereunder seized and sold the farm.—*Held,* that whether there was fraud or not in the conveyance from Mrs. Totten to the Allens, the complainant was not affected thereby

Canda *v.* Powers.

and his title, founded on the equitable one of the Allens under Mrs. Totten's deed to them, would prevail against the defendant's title under the sheriff's sales on his attachment.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. H. M. Barrett* and *Mr. J. R. Emery,* for complainant.

*Mr. J. Linn,* for defendant.

THE CHANCELLOR.

This suit is brought to remove a cloud from the title to the complainant's farm of about one hundred and sixty acres, known as the Smock Farm, situate in the counties of Middlesex and Somerset.   The premises are in two tracts, one of about thirty acres in the former county, and the other of about one hundred and thirty-one acres in the latter.   The cloud arises from a claim of title to the property, made by the defendant.   Before and up to January 11th, 1879, the premises were owned by Emma A. Totten, wife of John Totten.   By deeds of that date she conveyed them (her husband not joining in the deeds), in fee, to William Allen and Sarah E., his wife.   Those deeds were recorded on the 25th of the same month.   Allen and his wife conveyed the property to the complainant by deeds dated August 4th, 1880.   The defendant's claim is based upon an attachment issued by him against Mr. and Mrs. Totten, out of the supreme court of this state, January 12th, 1879, the next day after the conveyance to Mr. and Mrs. Allen (both Powers and the Tottens were residents of the city of New York), under which the right, title and interest of Mr. and Mrs. Totten in the farm were attached.   Mrs. Totten appeared to the attachment, and, after a trial therein, a judgment was entered against her on or about February 24th, 1880, upon which a writ of *fieri facias de bonis et terris* was issued on the 8th of November following.   Under that writ, the sheriff of Middlesex levied on the part of the farm which lay in his county, and on certain goods and chattels thereon belonging to the complainant, as the latter alleges.   The

sheriff having sold the personal property on the 5th of January, 1881, and not realizing enough from the sale to pay off the claim, sold the real estate on the 22d of March, in the last-mentioned year, to Powers, for $100. Under another like writ, issued on the judgment, the sheriff of Somerset sold that part of the farm which lay in his county to Powers, February 26th, 1881, for $100. At both of the sales of the real estate, the complainant gave public notice to the persons present that he was the owner of the farm and was in possession of it; that Mrs. Totten had no interest in it when the attachment was issued; that any person who should purchase at the sale would buy at his peril, and that suit would be brought to enforce the complainant's rights and protect his interest in the property. Powers took deeds from the sheriffs. In April, 1881, he began an action of ejectment to recover possession of the part of the farm which lies in Middlesex, which action was pending when this suit was brought, and was stayed by an injunction granted therein. After the sheriff's sale of the land had taken place the complainant discovered that the deeds from Mrs. Totten to Allen and his wife were invalid at law, because Mr. Totten did not execute them. He thereupon, to remedy the defect and establish his legal title, obtained conveyances of the property from Mr. and Mrs. Totten directly to himself, in April, 1881, which were recorded in May following. The reason why Mr. Totten did not join his wife in executing the deeds to Mr. and Mrs. Allen was, that he and she supposed that it was not necessary for him to do so in order to render the deeds valid in law, but believed that if executed by her alone they would convey a full and complete title, and they were so advised by their lawyer. The bill prays answer without oath; that Powers may be decreed to have no interest, right or title to the farm, or any lien thereon, by reason of the judgment or sales; that the cloud of the sheriffs' deeds to him upon the title may be removed, and that he may be restrained from further prosecuting the ejectment suit, or, by any other proceeding had or to be had by virtue of his judgment and the sales thereunder, in any way interfering

with the complainant's quiet possession and enjoyment of the premises.

Powers, by his answer, sets up several defences, viz.: That the deeds to Allen and his wife, though dated January 11th, 1879, were not executed until after the issuing of the attachment (which was issued January 12th, 1879), and that the certificates of acknowledgment on those deeds were fraudulently antedated; that the deeds were void in law because Totten did not execute them, and that they were fraudulent and without consideration, and made merely to defraud creditors, and therefore are void both at law and in equity; that one of them—the deed for the land in Middlesex—was not properly acknowledged, and therefore ought not to have been recorded; that he had no notice of the conveyances to Allen and his wife until after he recovered his judgment, and that the conveyances to the complainant were fraudulent and made with the intent and for the purpose of hindering, delaying and defrauding him in the collection of his debt due him from the Tottens, and therefore are void.

The important facts of the case appear to be that on the 11th of January, 1879, Mrs. Totten owned the farm. On that day she conveyed it to Mr. and Mrs. Allen (the latter was her daughter) for the consideration of $3,200, subject to a mortgage of $5,000 thereon. Of the purchase-money, $200 were paid in cash by Allen on the delivery of the deed, and for the rest he gave his three promissory notes dated January 11th, 1879, each for $1,000, and payable, respectively, in thirty, sixty and ninety days from date, to the order of Mrs. Totten. Those notes, within thirty days thereafter, were endorsed by her to the complainant and credited by him on her indebtedness to him on his books. He was a dealer in masons' building materials in the city of New York, and her indebtedness to him was for such materials sold and delivered to her through her husband, who was a builder, and then did, as for some time before that he had done, business in her name. The complainant endorsed the notes and put them in bank. When they became due they were not paid. He brought suit upon them in the marine court of New York city against Allen and Mrs. Totten, the endorser. No defence

was made. After he became entitled to judgment, Allen proposed to him to accept a conveyance of the farm in satisfaction of the claim on the notes, and he did so.

There is no evidence whatever worthy of the name to inculpate the complainant in the imputed design of hindering, delaying or defrauding the creditors of the Tottens, or any of them, by means of the conveyance of the property in question to him. He was the creditor of the Tottens for goods sold by him to them, to the amount, he swears, of $3,442.65, when the deeds to Allen and his wife were made. The three notes, each for $1,000, which the former gave to the Tottens as part of the consideration of the deeds, were, soon after they were given (Totten says it was within thirty days), endorsed by Mrs. Totten over to the complainant and credited on her account on his books. The complainant says that Totten brought them to him, and said that he, Totten, had them, and that the complainant had better take them, and the complainant says that as he thought it was only a short time they had to run, he would take them, and did so accordingly. After they became due he brought suit upon them, and then Allen proposed through Mr. Smith, the complainant's lawyer, who had sued him and Mrs. Totten upon them, to convey the property to him, with the stock and implements on the farm, in satisfaction of the notes. He appears to have consented to take them with considerable reluctance. Allen swears that when he approached the complainant on the subject and made the offer, the latter demurred, saying in substance, that he wanted no farm, but wanted his money. He also says that the complainant told him he would rather have the money than the farm, and that if Allen would give him the money for the notes he would give him $1,000 worth of any materials in his, the complainant's, line of business, in his yard. The complainant says he told Allen he would rather have the money than the farm, that he did not want the farm, that he had no particular use for it, but Allen said that his interest in the farm was worth more than the amount of his indebtedness to the complainant on the notes. He also says he told Allen that he would rather have the money in his business, a great deal, than to have the

Canda v. Powers.

farm, and that any time when Allen would pay him he could have the farm, or something like that. Before he took the property he directed his attorney to come to this state and search the title, and the latter did so. He says his lawyer told him the title was good, and the deeds were perfectly good, that he had drawn them. He adds that the lawyer told him the deeds were just as good without Totten's signature as with it, that the law on that subject in New York was the law here. Though in one of the deeds (that for the tract of about thirty acres) the consideration is said to be "$1,000, to be delivered in building materials, and the further sum of $1" (the consideration in the other is stated to be $7,000), he swears that that was not the consideration at all, but that the money due him from Allen on the three notes was the sole consideration. He also says that the lawyer who drew the deed is responsible, and not he, for that statement of the consideration in the first-mentioned deed. The proof is that the deeds were intended to be absolute, unconditional conveyances to him for the consideration of the amount due on the three notes.

Nor is the allegation that the deeds from Mrs. Totten to Mr. and Mrs. Allen were fraudulent, proved. They were not without consideration, as already appears. Allen swears that when he gave the notes he expected to be able to pay them at maturity, with the promised assistance of his brother, in which he was disappointed. Mr. Smith, the lawyer who drew the deeds, testifies that the notes were given in order that the Tottens might give them to the complainant on account of their debt to him, and that the farm was put into Allen's hands so that the complainant might thus have the security of it through the deeds from Allen and his wife, but it is quite clear from his testimony that the conveyance of the farm to the complainant was not in contemplation when the notes were given. Indeed, he says as much. It appears from his own admission that his recollection of the transaction is not clear. His age, when he testified, was eighty-two years, and he says his recollection is impaired. Totten testifies that the conveyance to the complainant was not contemplated in the conveyance to the Allens. The complainant swears that he took the notes on his knowledge of Allen (he

says he knew he was a very industrious man), and some inquiries that he made in regard to his responsibility, and that he did not then know that the farm had been conveyed to Allen, and never heard of it until after the notes had matured and he was engaged in trying to collect the money due on them. The fact that the conveyance to the Allens was to both of them, husband and wife, is some evidence that it was made to them for their own benefit. The proof does not establish the allegation of fraud against Allen.

But had there been fraud in the conveyance to the Allens, the complainant's title, he being innocent of the fraud, would not be affected by it. *Phelps* v. *Morrison, 10 C. E. Gr. 538.*

The Allens had no legal title when the attachment was issued, but they had an equitable one. The allegations in the answer, that the deeds to them were not given until after the attachment had been issued, and that the certificates of acknowledgment were fraudulently antedated, are not only not either of them supported by proof, but both are disproved. When the attachment was issued, the Tottens, in equity, had no title to the farm. They had, for a valuable consideration, parted with all their interest in it to the Allens, and though the conveyances which they made were void in law, they will be upheld in equity. The attachment bound only their estate in the property at the time it was issued, and therefore if they had, in equity, conveyed away all their estate, it, in fact, bound nothing. That the defendant had notice of the conveyance to the Allens before he recovered his judgment, is clearly proved. Totten testified on the trial in the attachment proceedings, in the presence of Powers, that the farm had been conveyed to Allen; that it belonged to Allen. The defendant, in his answer, states that Totten testified on the trial that he had had the farm conveyed to Allen, and that it was done after the beginning of the attachment suit, but there is no proof to sustain this version. It is clear, then, that Powers had notice of the conveyance to Allen before he recovered judgment in the attachment. He therefore, by the sale under the executions, acquired the legal title only, and he holds it subject to the equitable title of the complainant. The complainant is entitled to the relief prayed for in his bill, and he is entitled to costs.